# United States Court of Appeals for the Federal Circuit

---

**EDWARD W. GEIB,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7164

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-1501, Judge Lawrence B. Hagel.

---

Decided: October 29, 2013

---

THOMAS R. BENDER, Chisholm Chisholm & Kilpatrick Ltd., of Providence, Rhode Island, argued for claimant-appellant. Of counsel was ZACHARY M. STOLZ.

ALLISON KIDD-MILLER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent appellee. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel,

and JOSHUA P. MAYER, Attorney, United States Department of Veterans Affairs, of Washington, DC.

––––––––––––––––––

Before DYK, PROST, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Edward W. Geib appeals the final decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the March 21, 2011, decision of the Board of Veterans' Appeals ("Board") denying Mr. Geib's claim for a total disability rating based on individual unemployability. *Geib v. Shinseki*, No. 11-1501, 2012 WL 2050416 (Vet. App. Jun. 7, 2012). For the reasons set forth below, we *affirm*.

## BACKGROUND

Mr. Geib is a World War II veteran who suffers from multiple disabilities connected to his combat service. Mr. Geib developed trenchfoot (a type of immersion injury resembling frostbite) as a result of being exposed to extreme cold weather conditions while stationed in Germany in December 1944. After receiving treatment and returning to duty, an enemy artillery shell exploded in close proximity to Mr. Geib, causing hearing damage.

The Department of Veterans Affairs (VA) has granted Mr. Geib disability benefits. Mr. Geib was first assigned a 10% disability rating in connection with left trenchfoot when he was discharged from duty in March 1946. The VA subsequently increased Mr. Geib's disability rating to 20%, effective August 16, 2003, to account for trenchfoot on his right foot. On February 3, 2005, Mr. Geib was assigned a 70% combined disability rating after he was diagnosed with service-connected bilateral hearing loss and tinnitus (ringing in the ears).

On April 11, 2007, Mr. Geib applied for total disability based on individual unemployability (TDIU). In his

application, Mr. Geib indicated that he had worked as a self-employed carpet consultant from August 1984 to August 1989, prior to becoming too disabled to work. Before 1984, Mr. Geib had worked as a supervisor in the carpet industry. Mr. Geib also indicated in his application that he was high-school educated and had completed some correspondence courses in industrial engineering between 1947 and 1951.

On June 29, 2007, the VA's regional office denied Mr. Geib's TDIU claim on the basis that the evidence of record did not demonstrate that he was unemployable. Mr. Geib appealed to the Board, which in July 2009 remanded the case to the regional office with orders to provide Mr. Geib with medical examinations and to re-adjudicate his TDIU claim.

In April 2010, the regional office ordered a cold weather examination to address the severity of Mr. Geib's bilateral trenchfoot, and an audiological examination to evaluate his hearing impairment. The regional office requested that each examiner describe "the extent of functional impairment due to the veteran's service-connected disability(ies) and how that impairment impacts on physical and sedentary employment."

Mr. Geib underwent an audio examination on May 18, 2010. An audiologist confirmed that Mr. Geib suffered from hearing loss and tinnitus, with "poor" speech recognition in both ears. With respect to employability, the audiologist opined:

> It is the opinion of this examiner that the veteran's currently diagnosed hearing loss and tinnitus do not prevent him from seeking or maintaining gainful physical or sedentary employment within his community. In fact, individuals with hearing loss much worse than his are successfully employed. It can be expected that the veteran's hearing loss may result in some difficulty

understanding speech in noisy settings or over the phone. Employment would be more than feasible in a loosely-supervised situation, requiring minimal interaction with the public.

App. at 60.

The trenchfoot evaluation took place on June 23, 2010. During the evaluation, Mr. Geib reported that his trenchfoot did not affect his prior job as a supervisor because he was able to sit at a desk, but that he was unable to walk more than several miles as a result of his condition. The medical examiner confirmed that Mr. Geib suffered from trenchfoot and osteoarthritis. Regarding employability, the report indicated:

Based on the above facts, it is my opinion that Mr. Geib's employment would certainly be affected by his trenchfoot, and the fact that he could not do a mildly or moderately physical job that would include standing or walking for long periods of time. However, Mr. Geib should be able to obtain and maintain gainful employment at a sedentary job.

App. at 62-63.

The regional office reassessed Mr. Geib's TDIU claim on December 1, 2010. The office increased the disability rating associated with Mr. Geib's hearing condition from 50% to 80% because the audio evaluation showed his hearing loss had worsened. As a result, Mr. Geib's combined disability rating increased to 90%. The regional office declined to grant Mr. Geib total disability.

On appeal, the Board determined that Mr. Geib was not entitled to TDIU. The Board found that the medical evaluations indicated that Mr. Geib "would be employable in the type of sedentary position that he had previously held." App. at 28. Although it recognized that Mr. Geib's disabilities "do affect his employability," the Board concluded that they "do not prevent him from being em-

ployed, and therefore entitlement to a TDIU is not warranted." *Id.*

The Veterans Court affirmed the Board's decision on June 7, 2012. The court rejected Mr. Geib's argument that the Board was required to obtain a single medical opinion that addressed the impact of all his service-connected disabilities on employability. 2012 WL 20504126, at *3. The Veterans Court further found that the Board provided an adequate rationale supporting its decision not to grant TDIU, and that the Board properly considered the combined effect of both medical evaluations when it concluded that Mr. Geib was capable of sedentary employment in the type of loosely supervised setting described by the audiologist. *Id.* at *4. The court also found that the medical examinations were adequate because they sufficiently described the impact of Mr. Geib's hearing and trenchfoot conditions so as to allow the Board to make an informed decision regarding entitlement to TDIU. *Id.* at *5.

Mr. Geib timely appealed the decision of the Veterans Court. We have jurisdiction under 38 U.S.C. § 7292(c).

## DISCUSSION

We review *de novo* legal determinations of the Veterans Court. *Willsey v. Peake*, 535 F.3d 1368, 1372 (Fed. Cir. 2008). Except in cases involving constitutional issues, we may not review challenges to factual determinations or the application of law or regulation to the facts. *See* 38 U.S.C. § 7292(d)(2) (2006).

Section 5103A(a) of the Veterans' Benefits Code obligates the VA to "make reasonable efforts" to assist a claimant in obtaining the evidence necessary to substantiate a claim for benefits. *See* 38 U.S.C. § 5103A(a) (2006). In the context of disability claims, the assistance provided by the VA shall include "providing a medical examination or obtaining a medical opinion when such an

examination or opinion is necessary to make a decision on the claim." § 5103A(d)(1).

The VA may assign a total disability rating where the degree of impairment renders it impossible for the average person to maintain a substantially gainful occupation. *See* 38 C.F.R. § 4.15 (2013). A veteran who suffers from two or more service-connected disabilities is entitled to be considered for total disability if at least one disability is ratable at 40% or more, and additional disability brings the combined rating to 70% or more. 38 C.F.R. § 4.16(a). A veteran who fails to meet these percentage standards may still qualify for an "extra-schedular" TDIU rating if the VA determines that the veteran is unable to secure employment by reason of his or her service-connected disabilities. *See* 38 C.F.R. § 4.16(b).

Mr. Geib argues that the adjudication of a TDIU claim, where a veteran suffers from multiple service-connected disabilities, requires a single medical opinion addressing the aggregate effect of all disabilities on employability. According to Mr. Geib, this requirement is implicit in the VA's duty to assist and its obligation to provide, in the context of extra-schedular TDIU ratings, a "full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue." 38 C.F.R. § 4.16(b). Mr. Geib contends that, when a medical opinion does not address all these factors, the VA may not fill in the gaps by providing its own "expert" opinion regarding the combined effect of the veteran's disabilities. *See* Appellant's Br. at 20-22.

We agree with the Veterans Court's determination that the VA was not required to obtain a single medical opinion that addressed the impact of all service-connected disabilities on Mr. Geib's ability to engage in substantially gainful employment. 2012 WL 2050416, at *3. Although the VA is expected to give full consideration to "the

effect of combinations of disability," 38 C.F.R. § 4.15, neither the statute nor the relevant regulations require the combined effect to be assessed by a medical expert. Indeed, applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner. *See* 38 C.F.R. § 4.16(a). As part of this ultimate determination, the VA is required to obtain a medical examination or opinion only when "necessary to make a decision on the claim." 38 U.S.C. § 5103A(d)(1). Where, as here, separate medical opinions address the impact on employability resulting from independent disabilities, the VA is authorized to assess the aggregate effect of all disabilities, as it did.

To be clear, the VA is expected to give full consideration to "the effect of combinations of disability." 38 C.F.R. § 4.15. Additionally, the Board is subject to a statutory obligation to provide "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d) (2006). Where neither the regional office nor the Board addresses the aggregate effect of multiple service-connected disabilities, the record is not adequate to enable the veteran to understand the precise basis for the decision on a TDIU claim and facilitate review. *See Young v. Shinseki*, 22 Vet. App. 461, 466-68 (Vet. App. 2009). But that is not what happened here, as the regional office and the Board properly addressed the aggregate effect of Mr. Geib's multiple disabilities.

The Board's analysis was sufficient in this case. The Veterans Court found that the medical examinations were adequate and that the Board considered both examinations in assessing the combined effect of Mr. Geib's disabilities. 2012 WL 2050416, at *4-5. Mr. Geib did not assert that it was clearly erroneous for the Board to conclude that both examinations indicated that he would be employable in the type of sedentary position that he

had previously held. *See id.* Therefore, the Veterans Court correctly concluded that the Board's decision was adequate to facilitate review and inform Mr. Geib of the reasons for denying his TDIU claim.

Having decided that the VA's duty to assist does not require obtaining a single medical opinion regarding the combined impact of all service-connected disabilities, we decline to address Mr. Geib's remaining argument that the two medical evaluations in this case were inadequate. The Veterans Court examined the evidence and determined that the medical examinations provided a sufficient description of the respective injuries to support the Board's ultimate conclusion regarding employability. We lack jurisdiction to revisit the Veterans Court's determination that the Board properly weighed the evidence in reaching its conclusions. *See* 38 U.S.C. § 7292(d)(2); *Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010).

Mr. Geib asserts that we may review the Veterans Court's determination of the adequacy of the VA examinations because it implicates his due process rights under the Fifth Amendment. *See* Appellant's Br. at 43. We disagree. With respect to constitutional issues, we may review decisions by the Veterans Court that (1) rely upon an interpretation of regulation or statutory provisions that is "contrary to constitutional right, power, privilege, or immunity," or (2) involve genuine "free-standing" constitutional claims. *See* 38 U.S.C. § 7292(d)(1)(B); *In re Bailey*, 182 F.3d 860, 869-70 (Fed. Cir. 1999). The decision at issue here implicates neither of these jurisdictional grounds. Mr. Geib argues that denying a TDIU claim on the basis of inadequate medical opinions violates due process rights, but the Veterans Court did not interpret a regulation or statute to permit reliance on inadequate medical opinions. It simply found the two medical opinions adequate. *See* 2012 WL 2050416, at *4-5. And it is undisputed that Mr. Geib did not raise a "free-standing" constitutional claim below on the basis of the inadequacy

of the medical evaluations. We therefore decline to address the adequacy of the medical evaluations on constitutional grounds.

## CONCLUSION

Because we perceive no legal error in the proceedings below, we *affirm* the final decision of the Veterans Court affirming the Board's denial of Mr. Geib's TDIU claim.

## **AFFIRMED**

## COSTS

Each party shall bear its own costs.