Citation Nr: 1546219 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 05-29 968 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUE

Entitlement to a total disability rating for compensation purposes based on individual unemployability, to include on an extraschedular basis.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Jessica O'Connell, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1958 to December 1962. This matter comes properly before the Board of Veterans' Appeals (Board) on appeal from a January 2005 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut.


REMAND

The Board first considered the issue of entitlement to a total disability rating for compensation purposes based on individual unemployability (TDIU) in March 2008 and denied the Veteran's claim. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court), and in January 2009, the Court granted a Joint Motion for Remand submitted by the parties in the case and vacated the Board's March 2008 decision. The Joint Motion indicated that the Board failed to provide adequate reasons or bases in support of its decision with regard to a claim for service connection for a bilateral foot fungus disorder. The issue of TDIU was intertwined with that claim, and both claims were remanded by the Board in March 2010 for further development. In December 2011, the Board again remanded the issue of entitlement to TDIU for further development. This issue was most recently before the Board in October 2012, at which time the Board denied entitlement to TDIU.

In April 2014, the Court issued a Memorandum Decision setting aside the October 2012 Board decision finding that the Board "failed to explain in the decision what the cumulative functional impairment of the appellant's disabilities was and why that cumulative impairment did not prevent substantially gainful employment." In light of that finding, the Board remanded the Veteran's claim to the RO for consideration of TDIU on an extraschedular basis to obtain an opinion regarding the Veteran's employability from VA's Director of Compensation and Pension Service. The Director found, based on a February 2012 general medical examination and 

opinion and a March 2012 VA audiological examination, that the Veteran was not unemployable due to his service-connected disabilities alone.

The Board finds that the February 2012 VA examination is inadequate and that a new examination and opinion are required. Specifically, the examiner did not discuss the Veteran's service-connected calcaneal spurs on his bilateral feet. On the examination form, the examiner only acknowledged the Veteran's hearing loss and tinnitus disabilities and, in fact, checked the box that said there were "no symptoms, abnormal findings, or complaints," did not acknowledge any foot disorders, essentially found the examination to be normal, and opined that the Veteran's service-connected disabilities did not cause any functional impairment at that time. This is contrary to the medical evidence of record, which demonstrates that the Veteran's calcaneal spurs on his bilateral feet caused some level of functional impairment, and that he had received ongoing treatment for that disability. Therefore, new VA examinations and opinions are required, and these examinations and opinions must consider TDIU for the entire period on appeal.

The Board is prohibited from awarding TDIU on an extraschedular basis in the first instance without ensuring that the claim was initially referred to and considered by VA's Director of Compensation and Pension Service. See Floyd v. Brown, 9 Vet. App. 88, 95 (1996). On remand, following the requested VA examinations, the RO must refer the case to VA's Director of Compensation and Pension Service to obtain an opinion on the Veteran's employability.

The Board acknowledges that while a single medical opinion regarding the combined impact of all service-connected disabilities is not required, VA adjudicators are required to discuss the aggregate effect of multiple service-connected disabilities. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013) (holding that "neither the statute nor the relevant regulations require the combined effect to be addressed by a medical expert"); see also Floore v. Shinseki, 26 Vet. App. 376, 381 (2013). While guided by medical examinations and opinions, VA adjudicators are the ultimate arbitrators on whether or not the Veteran is entitled to a TDIU, not medical examiners. Geib, 733 F.3d at 1354. As such, the 

Board finds VA's Director of Compensation and Pension Service must provide a discussion of the functional impairment caused by the aggregate effect of the Veteran's service-connected disabilities. Thereafter, the RO must readjudicate the claim and, if it remains denied, must thereafter forward it to the Board.

Accordingly, the case is remanded for the following action:

1. The RO must send the Veteran and his representative the proper statutory and regulatory notice regarding what is necessary to substantiate a claim for entitlement to TDIU. The RO must also request that the Veteran complete VA Form 21-8940, the application for increased compensation based on unemployability.

2. The RO must contact the Veteran and afford him the opportunity to identify or submit any additional pertinent evidence in support of his claims. Based on his response, the RO must attempt to procure copies of all records which have not previously been obtained from identified treatment sources. When requesting records not in the custody of a Federal department or agency, such as private treatment records, the RO must make an initial request for the records and at least one follow-up request if the records are not received or a response that records do not exist is not received. All attempts to secure this evidence must be documented in the evidence of record by the RO.

If, after making reasonable efforts to obtain named records the RO is unable to secure same, the RO must notify the Veteran and (a) identify the specific records the RO is unable to obtain; (b) briefly explain the efforts that the RO made to obtain those records; (c) describe any further action to be taken by the RO with respect to the claim; and (d) inform the Veteran that he is ultimately responsible for providing the evidence. The Veteran and his representative must then be given an opportunity to respond.

3. After the above development has been completed, the Veteran must be afforded a VA audiological examination to determine the current severity of his service-connected bilateral hearing loss and tinnitus. All pertinent symptomatology and findings must be reported in detail and the examiner must discuss the functional impairment caused by the Veteran's service-connected bilateral hearing loss and tinnitus.

Any indicated diagnostic tests and studies, to include an audiogram by a state-licensed audiologist, must be accomplished. Specifically, the results of the audiological evaluation must state, in numbers, the findings of puretone decibel loss at 500, 1000, 2000, 3000, and 4000 Hertz; the puretone threshold average; and must also state the results of the word recognition test, in percentages, using the Maryland CNC test. 

4. Following the audiological examination, the RO must next provide the Veteran with the appropriate VA examination to determine the functional effects of his service-connected disabilities on his ability to obtain and maintain employment consistent with his education and occupational experience. The evidence of record, in the form electronic records, must be made available to the examiner, and the examiner must specify in the examination report that these records have been reviewed. All necessary special studies or tests are to be accomplished. The examiner must elicit from the Veteran and record for clinical purposes a full work and educational history.

Based on the clinical examination, a review of the evidence of record, and with consideration of the Veteran's statements, the examiner must provide an opinion as to whether the functional effects of the Veteran's service-connected disabilities of bilateral hearing loss, tinnitus, and calcaneal spurs of the feet preclude him from securing and following substantially gainful employment consistent with his education and occupational experience. This opinion must be provided without consideration of the Veteran's nonservice-connected disabilities, or age.

A complete rationale for all opinions must be provided. If the examiner cannot provide the requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. Additionally, the examiner must indicate whether any opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner.

5. The RO must notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for a scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

6. The examination reports must be reviewed by the RO to ensure that they are in complete compliance with the directives of this remand. If deficient in any manner, the RO must implement corrective procedures at once.

7. Following those examinations, refer the issue of extraschedular TDIU under 38 C.F.R. § 4.16(b) to VA's Director of Compensation and Pension Service. The Director must consider and discuss the cumulative functional impairment caused by the Veteran's service-connected disabilities, as well as the Veteran's education and employment history in providing an opinion on whether the Veteran is capable of obtaining and maintaining substantially gainful employment.

8. The Director's report must be reviewed by the RO to ensure that it is adequate and in complete compliance with the directives of this remand. Specifically, the report must consider the aggregate effect of the Veteran's service-connected disabilities on his employability. If the report is deficient in any manner, the RO must implement corrective procedures at once.

9. After completing the above actions, and any additional development deemed necessary, the RO must readjudicate the Veteran's claim. If any benefit on appeal remains denied, the Veteran and his representative must be provided a supplemental statement of the case and be given an adequate opportunity to respond. Thereafter, the case must be returned to the Board for appellate review.

No action is required by the Veteran until he receives further notice; however, he may present additional evidence or argument while the case is in remand status at the RO. Kutscherousky v. West, 12 Vet. App. 369 (1999). 



_________________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).